DECISION AND JUDGMENT ENTRY
Shawn Ferris appeals his convictions by the Lawrence County Municipal Court for driving without a license, a violation of R.C. 4507.02(A), failure to wear a safety belt, a violation of R.C. 4513.263, leaving the scene of an accident, a violation of R.C. 4549.02, and failing to control his vehicle, a violation of R.C. 4511.01. He argues that his conviction for failure to wear a safety belt is not supported by sufficient evidence. Because we find that, viewing all the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, we agree. Ferris also asserts that his conviction for driving without a license is not supported by sufficient evidence because the trial court erred in admitting his extrajudicial confession when the state did not prove the corpus delicti of the crime. We disagree because we find that the state produced independent evidence of a material element of the crime, that the trial court did not err in admitting Ferris' extrajudicial confession, and, as a result, that a rational trier of fact, viewing all the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, we affirm in part and reverse in part the decision of the trial court.
 I.
Ferris appealed and his appointed attorney filed an Anders brief pursuant to Anders v. California (1967) 386 U.S. 738. In our opinion on the Anders brief, we detailed the facts of this case as follows:
 On December 10, 1999, a one-vehicle collision occurred on County Road 115 in Union Township. State Highway Patrol Trooper Leah Mikes testified that when she arrived on the scene, the fire department and the emergency medical squad were already present. Trooper Mikes observed a 1988 red Ford Festiva in a small creek up against a tree. The passenger's side of the vehicle had very little damage to the dashboard area. The driver's side had extreme damage to the dashboard area, as well as damage to the steering wheel and the steering column. The windshield had also been broken out of the vehicle.
 A member of the fire department informed Trooper Mikes that when they arrived on the scene, an occupant was crawling out of the vehicle. Trooper Mikes testified that the individual, Larry Wells, was intoxicated and indicated that he was in the vehicle but could not remember what had occurred; however, he thought a deer may have caused the accident. Mr. Wells had a slight head injury and injuries to his finger and eye.
 Trooper Mikes then obtained statements from two bystanders, Donald Ferris and Gary Murdock. The two witnesses indicated that another occupant was in the vehicle. Based on this information, Trooper Mikes and the fire department personnel conducted a thorough search of the area. Trooper Mikes testified that she was concerned that the other occupant had been thrown from the vehicle or had crawled from the vehicle, attempted to run away, and was laying somewhere unconscious. However, no other occupant was located in the area. Trooper Mikes then cleared the scene and had a tow truck remove the vehicle. She was at the scene from approximately 6:30 p.m. to 7:30 p.m.
 Trooper Mikes testified that appellant was identified as the owner of the vehicle and the dispatcher attempted to contact him. However, she was not certain whether contact was made. The following day, Trooper Mikes contacted Larry Wells at the hospital. She obtained a written statement from Mr. Wells. Later that evening, the appellant, Shawn Ferris, came to the patrol post to obtain a release for his vehicle. Trooper Mikes obtained a statement from him regarding the accident, reduced it to writing and had appellant sign it. Appellant told Trooper Mikes that he was not the driver of the vehicle, but the passenger, and Mr. Wells was driving. He indicated that Mr. Wells was driving because appellant did not have a driver's license. When Trooper Mikes stated that Mr. Wells was intoxicated, appellant indicated that he did not know that. Appellant also stated that he did not know what time the accident occurred and could not remember anything. He stated that he and Mr. Wells were coming from Mr. Wells' house and going to get a saw at another friend's house. He also indicated that he had crawled out of the car after the crash and passed out directly beside the vehicle where he laid for several hours before he regained consciousness. Scott Ferris, appellant's cousin or nephew, had driven by and seen him in the creek. Appellant told Trooper Mikes that Mr. Ferris had physically pulled him out of the ditch and placed him into his own vehicle. He asked to go to the hospital, but Mr. Ferris refused because he did not have enough gas or money to buy gas.
 Trooper Mikes testified that appellant appeared to be in extreme pain and could barely walk. He pulled up his pants leg and showed Trooper Mikes his leg[,] which was very bruised and cut up. He also had scratches and cuts on his face and stated that he had severe chest pains. Appellant had to hold onto the wall to help himself walk.
 After interviewing appellant, Trooper Mikes asked Scott Ferris, who had accompanied appellant to the post, for a statement. He spoke to Trooper Mikes but refused to give a written statement.
 Trooper Mikes testified that, based on her four and one-half years of experience investigating automobile crashes, she concluded that appellant's injuries were consistent with the damage to the driver's side of the vehicle. She stated that appellant's injuries to his chest, hips, legs and thighs were consistent with the damage caused to the dashboard area and steering column. Trooper Mikes testified that appellant's legs would not have been bruised if he were in the passenger's seat because there was no damage to the passenger side in that area. Trooper Mikes admitted, however, that it is possible that appellant sustained these injuries from being thrown out of the car.
 Larry Wells testified that on the evening of the accident he was at his home, which he shared with his girlfriend. He drank four to five beers but was not intoxicated. Appellant came to his house and they went to get a saw from his friend's house. Initially, Mr. Wells testified that he did not remember much of the accident and could not remember who was driving.
 Mr. Wells later testified that only he and appellant were in the vehicle. Mr. Wells stated that he had two operable vehicles of his own at home but he does not drive after he has been drinking. He then stated that he was positive he was not driving but he was not sure who was driving. Mr. Wells stated that he has never driven appellant's car and was wearing his seat belt at the time of the accident.
 Mr. Wells testified that he broke his finger and hurt his back, his right arm and his knee in the accident. He also hit his head on the window and needed stitches. He suffered from headaches and dizzy spells as a result of the accident. Mr. Wells testified that nobody threatened to burn his house down or harm his children if he testified.
 On cross-examination, Mr. Wells admitted that he told the trooper that he had twelve beers to drink. He also admitted telling the trooper that he did not know who was driving the vehicle.
 On re-direct examination, Mr. Wells again stated that he did not know if appellant was driving the vehicle at the time of the accident. Mr. Wells did state, however, that if he was not driving and appellant was there, appellant had to have been driving. Finally, Mr. Wells conceded that appellant was driving him to get the saw.
 Gary Murdock testified that he was visiting Don Ferris on the evening of the accident. They were in the garage talking when they heard a thump. Approximately twenty minutes later, a neighbor stopped by and told the men that there was a bad wreck up the road. Mr. Murdock ran up there but it was dark and he could not see. However, he could tell that there were two people in the car though he could not identify them. Donald Ferris accompanied Mr. Murdock to the scene, which was approximately six hundred feet away from the garage. The vehicle was in the creek and its front end was up on the bank. He could not recall what time the accident occurred.
 Mr. Murdock testified that it appeared that the impact had thrown the two occupants together and the passenger was [lying] against the driver. Mr. Murdock asked Don Ferris' wife to call the emergency medical squad. Mr. Murdock returned to Don Ferris' property to tie up his dog and then returned to the scene of the accident. When he returned, there was only one person in the car. Mr. Murdock told the trooper that there were two people in the car. He did not know appellant at the time of the accident.
 Donald Ferris testified that he is a distant relative of appellant's. After the accident, he and Mr. Murdock went to the scene but he could not see anything because there was no light. Donald Ferris testified that he could not tell how many people were in the vehicle though he was within fifteen to twenty feet of it. He saw a man get out of the car and try to get out of the creek away from the scene. However, he did not recognize the person. Ferris further testified that he did not see the other occupant until he was brought onto the road; Ferris did not see anybody lying around near the accident scene.
The trial court found appellant guilty of all the charges.
Opinion (Jan. 29, 2001). We note that the record contains no written finding of Ferris' guilt. While the trial court verbally found Ferris guilty and a finding of guilty is implicit in the imposition of sentence, the better practice would be for the trial court to have issued a written entry finding Ferris guilty as the court speaks only through its journal. Schenley v. Kauth (1953) 160 Ohio St. 109, paragraph one of the syllabus.
As noted above, Ferris appealed and his appointed attorney filed an Anders brief pursuant to Anders v. California (1967) 386 U.S. 738. We found that an appeal would not be wholly frivolous and appointed new counsel for Ferris. Opinion (Jan. 29, 2001). Ferris' new counsel filed an appellate brief assigning the following errors:
 I. The trial court erred in convicting the Defendant of failing to wear a safety belt because the evidence was not sufficient to convict.
 II. The trial court erred in convicting the Defendant of driving without a license because his extrajudicial statement by plain error was not admissible, so that the evidence was not sufficient to convict.
 II.
In his first assignment of error, Ferris argues that the trial transcript is devoid of any evidence supporting his conviction for failure to wear a seatbelt, a violation of R.C. 4513.263(B). The state concedes that we have already decided that there is nothing in the record to support this conviction and "had nothing further to offer this court in the way of argument to the seatbelt charge."
When we review the sufficiency of the evidence, we must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979),443 U.S. 307.
R.C. 4513.263 provides:
(B) No person shall do any of the following:
 (1) Operate an automobile on any street or highway unless that person is wearing all of the available elements of a properly adjusted occupant restraining device * * *.
We previously determined that "a thorough review of the trial transcript reveals no evidence that appellant was not wearing his seat belt at the time of the accident." Opinion (Jan. 29, 2001). The state now concedes that it cannot point to any evidence in the record that indicates that Ferris was not wearing his seatbelt. Thus, we find that, viewing all the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, there is insufficient evidence to support Ferris' conviction for violating R.C.4513.263 and we sustain Ferris' first assignment of error.
 III.
In his second assignment of error, Ferris argues that his conviction for driving without a license is not supported by sufficient evidence. He argues that the trial court committed plain error by allowing Trooper Mikes to testify that Ferris told her that he was not driving his own car because he did not have a driver's license. He argues that there is no evidence apart from this extrajudicial confession tending to establish the corpus delicti of the offense so that the confession is admissible.
The corpus delicti of a crime is essentially the fact of the crime itself. It is comprised of "two elements: 1. The act. 2. The criminal agency of the act." State v. Maranda (1916), 94 Ohio St. 364, paragraph one of the syllabus. See, also, State v. Edwards (1976), 49 Ohio St.2d 31,34; State v. Van Hook (1988), 39 Ohio St.3d 256, 261.
The state must produce independent evidence of the corpus delicti of a crime before the court may admit an extrajudicial confession. Maranda,94 Ohio St. 364, at paragraph two of the syllabus; State v. Haynes
(1998), 130 Ohio App.3d 31, 34. "The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." Maranda at paragraph two of the syllabus; Haynes at 34. That evidence may be direct or circumstantial. Maranda, 94 Ohio St. at 371; State v. Nicely (1988),39 Ohio St.3d 147, 154-155; State v. Clark (1995), 106 Ohio App.3d 426,431. "* * * Ohio does not require evidence upon all elements of the crime but only 'some material element.'" Van Hook, at 262, quoting Maranda at paragraph two of the syllabus (emphasis in original).
R.C. 4507.02(A) provides:
 No person * * * shall operate any motor vehicle upon a highway or any public or private property used by the public for purposes of vehicular travel or parking in this state unless the person has a valid driver's license issued under [R.C. Chapter 45] * * *.
Here, there is evidence that Ferris was driving, which is a material evidence of the crime charged. Wells testified that Ferris was driving and Trooper Mikes testified that Ferris' injuries were inconsistent with those that would have been sustained from the passenger seat in this particular accident, based upon her observation of the areas of damage to the vehicle. Thus, there is some evidence of a material element of the crime. Because the state need not produce some evidence of all the material elements of a crime, we find that the state produced independent evidence of the corpus delicti of the crime. Therefore, the trial court did not err in admitting Ferris' extrajudicial confession.
We also find that a reasonable trier of fact viewing all the evidence in the light most favorable to the prosecution could find that Ferris operated a motor vehicle without a valid license. Ferris admitted to Trooper Mikes that he did not have a valid license. Wells testified that Ferris was driving and Trooper Mikes testified that Ferris' injuries were inconsistent with those sustained from the passenger seat in an accident. Thus, Ferris' conviction for driving without a license is supported by sufficient evidence.
Accordingly, we overrule Ferris' second assignment of error.
 IV.
In sum, we sustain Ferris' first assignment of error and overrule his second assignment of error. Accordingly, we reverse Ferris' conviction for violating R.C. 4513.263, failure to wear a safety belt, and affirm his conviction for violating
R.C. 4507.02(A), driving without a license. Upon remand, the trial court shall dismiss the seatbelt violation.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED IN PART AND AFFIRMED IN PART, and the cause remanded to the trial court for proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.